CELIA M. RUIZ, SBN 87671
DAVID E. LYON, SBN 133065
OKHEE SHIM, SBN 240998
RUIZ & SPEROW, LLP
2000 Powell Street, Suite 1655
Emeryville, CA 94608
Telephone: 510-594-7980
Fax: 510-594-7988

Attorneys for Plaintiff
SAN RAFAEL CITY SCHOOLS

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN RAFAEL CITY SCHOOLS<br><br>        Plaintiff,<br><br>v.<br><br>OFFICE OF ADMINISTRATIVE HEARINGS,<br><br>        Defendant.<br>_____<br><br>Related Case:<br><br>T.M., a minor,<br><br>        Plaintiff,<br><br>v.<br><br>SAN RAFAEL CITY SCHOOLS,<br><br>        Defendant<br>_____ | Case No. C07-4702 WHA<br>Related Case No. C07-5751 WHA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Date:   March 6, 2008<br>Time:  08:00 a.m.<br>Location: Courtroom 9, 19th Floor<br>Hon. William H. Alsup |

**PLAINTIFF/CROSS-DEFENDANT
SAN RAFAEL CITY SCHOOLS'
BRIEF IN OPPOSITION**

# TABLE OF CONTENTS

Page No.

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   The Spring 2006 IEP Establishing Services for the Remainder of the Year
        and on into Third Grade. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   TM's Three Weeks in Third Grade at Sun Valley in the Fall of 2006. . . . . . . . . . 2

    C.   TM's Parents Repeatedly Rebuffed Attempts to Address Their Concerns
        in the Fall of 2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.   TM's Abrupt and Unannounced Departure from Sun Valley. . . . . . . . . . . . . 5

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.   Legal Standard for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   Legal Standard for Award of Reimbursement . . . . . . . . . . . . . . . . . . 7

    C.   TM's Claim for Reimbursement Must Be Denied Because the District
        Provided and Offered Him FAPE. . . . . . . . . . . . . . . . . . . . . . . . 9

    D.   TM's Claim for Reimbursement Must Be Denied Because the Parent's
        Unilateral Placements Were Not Appropriate. . . . . . . . . . . . . . . . . . 9

    E.   TM's Claim for Reimbursement Should Be Denied Because His Parent's
        Failed to Provide the Required Notice to the District That They Were
        Rejecting Its Services and Failed to Provide the District an Opportunity
        to Address Their Concerns. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    F.   TM Is Not Entitled to an Award of Any Fees, but Instead, the District
        Should Be Awarded its Attorneys Fees Incurred in Defeating TM's
        Meritless Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Cases**                                                          Page Nos.

Amanda J. ex rel. Annette J. vs. Clark County School Dist.
(9th Cir. 2001) 267 F.3d 877 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Bend-Lapine School Dist. vs. K.H.
(9th Cir. 2007) 234 Fed.Appx. 508 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bettinger vs. New York City Bd. of Educ. (S.D.N.Y. 2007)
2007 WL 4208560, *5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Florence County Sch. Dist. 4 vs. Carter
510 U.S. 7 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Ford ex rel. Ford vs. Long Beach Unified School Dist.
(9th Cir. 2002) 291 F.3d 1086 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

G ex rel. RG vs. Fort Bragg Dependent Schools
(4th Cir. 2003) 343 F.3d 295 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gagliardo vs. Arlington Central School Dist.
(2d Cir. 2007) 489 F.3d 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Greenland School Dist. vs. Amy N.
(1st Cir. 2004) 358 F.3d 150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gregory K. vs. Longview School Dist.
811 F.2d 1310; C.A.9 (Wash.),1987. . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hooks vs. Clark County School Dist.
(9th Cir. 2000) 228 F.3d 1036 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

M.L. vs. Federal Way School Dist.
(9th Cir. 2005) 394 F.3d 634 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ms. M. ex rel. K.M. vs. Portland School Committee
(1st Cir. 2004) 360 F.3d 267 . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11-12

Ms. S. ex rel. G. vs. Vashon Island School Dist.
(9th Cir. 2003) 337 F.3d 1115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

M.V. vs. Shenendehowa Cent. School Dist.
(N.D.N.Y. 2008) 2008 WL 53181 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Parents of Student W. vs. Puyallup School Dist., No. 3
(9th Cir. 194) 31 F.3d 1489 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Park ex rel. Park vs. Anaheim Union High School Dist.
(9th Cir. 2006) 464 F.3d 1025 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Reid ex rel. Reid vs. District of Columbia
(D.C. Cir. 2005) 401 F.3d 516 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

School Comm. of the Town of Burlington, Mass. vs. Department of Educ.
471 U.S. 359 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Van Duyn ex rel. Van Duyn vs. Baker School Dist. 5J
(9th Cir. 2007) 502 F.3d 811 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


**Statutes, Codes**

California Education Code
§ 56176 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

34 Code of Federal Regulations
§ 300.403(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

//

//

**TABLE OF AUTHORITIES, Cont'd.**

**Statutes, Codes, Cont'd.**                                                      Page Nos.

20 United States Code
    § 1400, et seq. ("Individuals with Disability Education Act 'IDEA'") . . . . . . . . . . . . . . . 1
    § 1412(C)(l)(iii)(I)(aa, bb) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    § 1415(a)(10)(C)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    § 1415(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
    § 1415(e)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    § 1415(i)(3)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I.     INTRODUCTION

Real Party TM ("TM") appeals the reimbursement award in the Office of Administrative Hearing's August 13, 2007 Decision ("Decision") on his due process complaint brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.  While TM asks for more money, he identifies no error of law or fact.  In fact, TM is entitled to no reimbursement at all for three independent reasons: first, because the District provided him a free and appropriate public education ("FAPE"); second, because his placements were all inappropriate under the least restrictive environment requirement of the IDEA; and third, because his parents' failure to provide the required notice, and their failure to cooperate with the District bars their claim for reimbursement.

## II.    FACTUAL BACKGROUND

TM's motion is brought pursuant to his cross appeal of the decision entered by the Office of Administrative Hearings on August 13, 2007 ("Decision") of his due process complaint brought under the IDEA, 20 U.S.C. 1400, *et seq*.  In that decision, the court denied 8 of his 13 claims outright, and found in his favor on four, and split the decision on a fifth.  Decision at 1876-1877 (initial identification of issues); *id.* at 1878-1909 (factual findings and legal conclusions).  TM does not challenge any of the Decision's findings, except for the Decision's reimbursement award.

### A.     The Spring 2006 IEP Establishing Services for the Remainder of the Year and on into Third Grade

In the spring of his second grade year, an IEP was held for TM, which including his mother, ZM, TM's tutor, Joy Ruppersberg, who attended both to provide information regarding her work with TM and as an expert advocate for ZM, as well as four special education experts, including TM's resources specialist, speech and language therapist, and his second grade teacher, the special education program manager who was acting principal for TM's school, Sun Valley Elementary School ("Sun Valley"), as well as licensed school psychologist, Michael Buckley.  Together, they all agreed upon an educational plan for TM which included doubling his resource specialist time to four times a week, determination of numerous goals in language arts as well as speech, numerous classroom accommodations, and interaction between Ms. Ruppersberg and Sun Valley educators, as well as continued interaction between ZM and Ms. Dahlstrom.  *See* San Rafael City School's Brief in Support

1  of Motion for Summary Judgment/Review ("District's Brief") at 18:28-19:9. TM's mother, ZM, did

2  not object to the proposed services, but instead, assisted by her advocate and special education expert,

3  Joy Ruppersberg, signed her consent to them. *Id.*; *see* "Individualized Education Program" ("IEP")

4  2/7/06-3/7/06, 2366.

5        In an unchallenged part of the Administrative Decision, the Hearing Officer held that pursuant

6  to this IEP, that by March of 2006, well before TM's entry into 3rd grade, the District was providing

7  sufficient resource specialist services to TM and that he was receiving educational benefit. Decision

8  at 1897 ("As noted in Factual Finding 60-64, the February-March 2006 IEP team provided Student

9  with a FAPE by offering four 30-minute sessions of RSP support."); *accord,* Decision at 1894

10  ("District had ... been providing a FAPE to Student, in the way of RSP services, for about three

11  months, during which time Student had demonstrated initial progress."); Decision at 1892 (affirming

12  TM made progress).[1]  However, because TM has conceded the correctness of the Administrative

13  Decision's determination that he was receiving benefit, there is no consequence to that alleged failure.

14  In other words, by the time of the fall of 2006, TM has not challenged but conceded that in the fall of

15  2006 TM was receiving FAPE and was receiving educational benefit from the District.

16      **B.    TM's Three Weeks in Third Grade at Sun Valley in the Fall of 2006**

17        For three weeks in the fall of 2006, TM attended a third grade class was co-taught by Paula

18  De Blaaw[2] and Liz Nelson.[3]  1112:23-1113:5(PD); 502:25-503:2(LN).

19

---

20  [1]    The only outstanding criticism of the District's services at this time by the Hearing Officer was

21  the quibble regarding specification of identification of a spelling and writing goal for the resource specialist time.  Decision at 1908, 1897.  The District has set forth in its cross-appeal why the

22  contention is without substance or consequence, including the fact that the lack of such goals was endorsed by TM's own expert. Motion for Summary Judgment/Review ("District's Brief") at 18:15-

23  21:3.  The claim is particularly without consequence in light of the extensive services provided to TM's in the third grade general education setting in reading and spelling. *See infra at* 2:18-4:21.

24

25  [2]    Paula De Blaaw has a Bachelor's degree in psychology from Sonoma State University.  She also received a an elementary multiple subject teaching credential, with an emphasis in early

26  childhood education. 1103:10-1104:9(PD).  She worked for one year as an instructional aid for a child with cerebral palsy, and assisted her with her reading and writing. 1105:4-20(PD). Ms. De Blaaw has

27  taught for 15 years at Sun Valley, starting with 2d grade, then 3rd grade, and then taught a combined 2d and 3rd grade class for five or six years. For the last four or five years has taught a third grade class.

28                                                     (continued...)

1    Both Ms. De Blaaw and Ms. Nelson knew and were familiar with TM before he even entered

2    their class. 1111:18 - 1112:7(PD); 502:25 - 503:2(LN).

3    Both teachers reported that in preparation for his attendance in their class, they discussed him

4    and his needs with both Michelle Giraud, his second grade teacher with special education training, and

5    Ms. Dahlstrom, the resource specialist. 1112:8-14(PD); 505:24 -513:9(LN).[4] Ms. De Blaaw explained

6    that she is made aware of those students who are under IEP's in her classroom, both through the class

7    placement planning process, through class lists and through discussion with Ms. Dahlstrom during the

8    first week of class. 1107:19-1109:2(PD). The teachers explained the planning that goes into assigning

9    students to a classroom, such as, in TM's case, putting a student together with a friend who might be

10   helpful for them. 1118:13-21(PD); 514:5-24(LN).

11   TM's teachers explained that they initiated a number of accommodations for him including

12   preferential seating, note taking assistance, peer buddy, shortened assignments, extended team,

13   alternative forms of directions, tape listening, small group work and one on one instruction. 1113:11-

14   1121:17(PD); 511:8-22(LN). Ms. Nelson explained that accommodations were provided in a way so

15   as not to make TM feel different (*id.*), and that these accommodations were put into place on his first

16   day of school. 516:5- 9(LN).[5]

17

18   [2]    (...continued)
     1105:21-1106:5(PD). She has extensive experience working with students who have fallen below
19   grade level, and every year has at least one and sometimes as many as three or four students who are
     on IEP's. 1107:15-18(PD).
20

21   [3]    Ms. Nelson has a Bachelor's degree in liberal studies with an emphasis in child development.
     She obtained a multi-subject teaching credential from Dominican University. 498:7-19(LN). She has
22   taught at Sun Valley since 1996, full time for the first seven years and part-time for the last four. She
     has taught kindergarten, second, third and fourth grades, as well as a year of teaching intervention.
23   499:1-22(LN). Her intervention work involved providing one on one assistance to about 20 students
     a week, from 2d through 5th grades, primarily in language arts, to help them get up to grade level.
24   499:23-500:24(LN)

25   [4]    Ms. De Blaaw explained that spoke with ZM about TM and ZM's concerns, and described to
26   her the accommodations that were being provided. 1122:1-18(PD).

27   [5]    The teachers also explained how they coordinated with Ms. Dahlstrom regarding when best
     to take TM out of the class for his resource specialist time, to ensure it minimized the impact on his
28                                                                                            (continued...)

1  TM's teachers explained that Houghton Mifflin third grade language arts curriculum has both

2  reading and spelling components. 519:14-521:20(LN). Typically, they spent about two hours a day

3  on language arts. 523:12-15(LN). The Houghton Mifflin curriculum contains a lot of read aloud or

4  audio components. 522:6-13(LN). In addition to the Houghton Mifflin curriculum, the teachers

5  provided a variety of alternative approaches to the material, to ensure that each student, regardless of

6  their reading level, would benefit. 1140:8-1141:9(PD); 529:9-24(LN). For example, TM worked in

7  small groups with students at his level, and also receive individual instruction. 1138:14-1139:3(PD).

8  In spelling, TM was tested and then assigned to a small group matched to his abilities. 1134:5-

9  1138:9(PD).

10  Ms. Nelson testified that she was confident TM would have been happy and successful in their

11  class. 516:10 -517:4(LN). Ms. Nelson reported that while in their class, TM was a happy, well liked

12  student, who was always comfortable asking for help. 503:3-504:3(LN). Ms. De Blaaw also testified

13  that TM adjusted well to third grade (1125:16 -1127:24(PD)), and that based on working with him,

14  that she and her teaching partner had a good understanding of what TM needed and would have been

15  able to provide it to him. 1131:8 -1132:10(PD). Ms. De Blaaw felt confident that TM would be

16  successful in her class, as she works hard to make sure each student succeeds and as she has a lot of

17  small group work, which includes a number of parent volunteers. 1122:23-1124:16(PD). For

18  example, TM could complete the classroom work with accommodations. 1155:15-20 (PD).

19

20  **C.    TM's Parents Repeatedly Rebuffed Attempts to Address Their Concerns in the Fall of 2006.**

21  Ms. Dahlstrom explained that she approached ZM on the first day of 3rd grade, August 27,

22  2006, and that ZM expressed concerns regarding TM, specifically regarding his reading. 309:1-14;

23  312:11-313:13. Ms. Dahlstrom's immediate response was to suggest holding a meeting to discuss her

24  concerns. *Ib.*; 310:13-312:10; 317:2-319:4; *see* "Log of Important Contacts," Exh. 44, 2341 ("We will

25  hold mtg w/in 2 wks w/team to discuss strategies for year."). Ms. Dahlstrom wanted to arrange a

26  meeting that would include herself, the speech and language therapist, the principal, and TM's regular

27  _____

28  [5]    (...continued)
general education work. 509:4 - 17(LN).

1  teachers.  314:13- 315:19.  The purpose of the meeting would have been to ensure they were

2  appropriate addressing TM's needs, and to provide any adjustment or alteration of services that might

3  be appropriate.  417:11-18.

4        The very next day, Ms. Dahlstrom followed up this meeting with a phone call to TM's mother

5  to try and arrange the meeting. 416:24-417:22.  ZM, however, refused to meet, and insisted that the

6  meeting be postponed until after ZM had a chance to visit a private school in Monterey.  *Ib.*; 313:20-

7  314:6; 319:5-13; "Log of Important Contacts," Exh. 44, 2341, (8/28/06 entry regarding phone contact

8  by FD to TM "[t]o set up mtg /team.  They are considering private school placement in Monterey.

9  Mtg postponed until after they visit school.").

10        Ms. Dahlstrom testified that she subsequently called again, and this time ZM refused to meet

11  at all.  418:16-419:5; "Log of Important Contacts," Exh. 44, 2341, ("Zelda does not want to meet at

12  this time.  Considering Star Academy.").  ZM confirmed that she had decided at this time to place TM

13  in a private school as she felt Sun Valley could not meet TM's needs. 1188:3-14; 1290:6-23; *see also*

14  1292:2-1293:4(regarding finding Star).  Ms. Dahlstrom persisted, explaining that services could have

15  been increased for TM at this time if such increase appeared appropriate.  418:16-419:5.[6]  The

16  Decision acknowledged that the evidence established that ZM both failed to provide the District notice

17  of her intention to unilaterally place TM, and also refused to agree to meet with the District to discuss

18  her concerns regarding TM in the fall of 2006. Decision at 1908, 1897.

19      **D.**    **TM's Abrupt and Unannounced Departure from Sun Valley**

20        Ms. Dahlstrom explained that while ZM informed her that they were considering placing TM

21  at Star Academy, she never was informed by her that such placement was actually occurring until TM

22  simply did not show up at school. 419:6-12(FD); 321:3-17(FD).  Similarly, both Ms. Nelson and Ms.

23  De Blaaw first learned of the change in placement through TM's absence. 1128:6-1130:15(PD);

24  517:18-518:24(LN).  Ms. De Blaaw was never told by ZM that she planned to place TM at Star

25  Academy, and was shocked when she learned he had been removed from Sun Valley.  1144:12 -

26  _____

27  [6]     Ms. Dahlstrom explained that in setting up IEP meetings, she always works to accommodate
a parent's schedule, as there are a critical part of the IEP team to provide input regarding the student's

28  experiences at home and to raise their concerns.  417:23-418:15; 315:20-316:25.

1  1145:14(PD). Ms. Nelson only learned that TM was leaving Sun Valley when she received a note or

2  email from Ms. De Blaaw (517:18-23(LN)), and was disappointed as she did not have a chance to say

3  goodbye or to give him anything. 517:24-518:1(LN). In addition, they usually try to provide a student

4  some sort of send off before they leave. 518:2-7(LN). Even TM's friend Jake was surprised by the

5  news and became extremely upset. 518:8 -519:5(LN). ZM admitted that she was determined to place

6  TM at a private school once she had received test reports from the Lindamood Bell program in the

7  summer of 2006. 1188:3-119:6; 1290:6-23; *see* Lindamood-Bell "Pre-Testing Summary," dated

8  September 1, 2006, 2179-2182.

9       After TM simply stopped showing up, the next contact by ZM was to request copies of TM's

10  files, coinciding with her visit to an attorney. *See* 1301:11-1302:10(ZM); 1301:11-1302:3 (ZM first

11  met with attorney in March 2007 or later); *see* "Log of Important Contacts," Exh. 44, 2341 (copies of

12  TM's file requested in March of 2007).  On May 18, 2007, TM filed his due process complaint.

13  "Special Education Due Process Complaint Notice" ("Complaint") 2167.

14  **III.    ARGUMENT**

15       **A.    Legal Standard for Review**

16       On review of a due process claim, "... the court shall receive the records of the administrative

17  proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the

18  preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20

19  U.S.C. § 1415(e)(2).

20
21       The traditional test of findings being binding on the court if supported by substantial
     evidence, or even a preponderance of the evidence, *does not apply*. .... The court, in
22     recognition of the expertise of the administrative agency, must consider the findings
     carefully and endeavor to respond to the hearing officer's resolution of each material
23     issue. *After such consideration, the court is free to accept or reject the findings in part
     or in whole.*

24  *Ms. S. ex rel. G. v. Vashon Island School Dist.* (9th Cir. 2003) 337 F.3d 1115, 1127, fn. 16 (emphasis

25  added).[7]

26  _____

27  [7]    In asserting a "clear error" standard of review, TM dramatically misstates and misapplies the
     teachings of his own authority, *Amanda J. ex rel. Annette J. v. Clark County School Dist.* (9th Cir.

28                                                                                      (continued...)

**B.    Legal Standard for Award of Reimbursement**

TM provides no legal authority which would encourage, much less require, complete reimbursement for his ill-advised and unjustified placement in the highly restrictive Star Academy. It is fundamental that parents who unilaterally change their child's placement without the consent of the school district do so at their own financial risk. *School Comm. of the Town of Burlington, Mass. v. Department of Educ.*, 471 U.S. 359, 374-75 (1985); *Florence County Sch. Dist. 4 v. Carter*, 510 U.S. 7, 15 (1993). Instead, TM's own authority, *Bettinger v. New York City Bd. of Educ.* (S.D.N.Y. 2007) 2007 WL 4208560, *5, explains that "tuition reimbursement for private schooling is not the normal remedy that Congress intended in a typical IDEA case" but instead, is available only in "unusual or extraordinary circumstances."

As confirmed by his own authority, *Gagliardo v. Arlington Central School Dist.* (2d Cir. 2007) 489 F.3d 105, 111 -112, TM holds the burden on the reimbursement request.

20 U.S.C. §1415 provides in subsection (a)(10)(C)(i), that a school district is not required "to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility."

As explained by the United States Supreme Court in *School Committee of Town of Burlington*,

---

[7]    (...continued)

2001) 267 F.3d 877, 887-889 (citations omitted), which addresses the standards a *federal appellate court* uses in reviewing a *federal district court's* findings of fact, and otherwise articulates a *de novo* standard of review:

> This case requires us to conduct a multi-layered review of decisions of the district court, the Nevada State Review Officer, and the District's Due Process Hearing Officer. We review the district court's findings of fact for clear error even when they are based on the written record of administrative proceedings. ... Questions of law and mixed questions of fact and law are reviewed *de novo*, unless the mixed question is primarily factual. *Gregory K.*, 811 F.2d at 1310. We review *de novo* the question of whether a school district's proposed individualized education program provided a free appropriate public education. *Id.*

The court in that case also discusses the deference due when there are two levels of underlying administrative review, which is not pertinent here. *Id.*

1  *Mass. v. Department of Educ. of Mass.* (1985) 471 U.S. 359, 367-70, reimbursement claims require

2  consideration of three factors: "(1) whether the services offered by the board of education were

3  inadequate or inappropriate, (2) whether the services selected by the parents were appropriate, and (3)

4  whether equitable considerations support the parents' claim for reimbursement." *Bettinger v. New*

5  *York City Bd. of Educ.* (S.D. N.Y. 2007) 2007 WL 4208560, *5.

6  Even if parents can meet the first two *Burlington* requirements, reimbursement may still be

7  denied or reduced for "equitable" reasons, such as where 1) the parents fail to give notice of their

8  intent to make a unilateral placement. 20 U.S.C. §1412(C)(1)(iii)(I)(aa, bb); 2) where the parents

9  impeded the District from offering or providing FAPE, *Ms. M. ex rel. K.M. v. Portland School*

10  *Committee* (1st Cir. 2004) 360 F.3d 267, 269 -271; 3) where the parents acted unreasonably, 34 C.F.R.

11  § 300.403(d), Educ. Code § 56176; or, 4) where the cost of the placement was unreasonable. *School*

12  *Comm. of the Town of Burlington, Mass. v. Department of Educ.*, 471 U.S. 359, 374, 369 (1985);

13  *Florence County Sch. Dist. 4 v. Carter*, 510 U.S. 7, 15 (1993).

14  TM fails to present an allowable claim for reimbursement on all three *Burlington* points. First,

15  as set forth in its motion for judgment on its cross-appeal, the District established that it had provided

16  TM FAPE; second, the District also set forth in its cross-appeal that the TM's highly restrictive

17  unilateral placements were all inappropriate as violative of the IDEA's mainstreaming requirement;

18  and third, as will be developed herein , reimbursement should be entirely denied due to the parents'

19  failure to provide the statutorily required notice and otherwise failed to cooperate with the District.

20  Parents, of course, have the prerogative of placing their child anywhere they wish. They have

21  no right, however, to force public school districts, with limited budgets and responsibilities to

22  thousands of students, to pay for their unilateral choices.[8] As explained by the court in *Bettinger*:

23

24  [8]    Courts recognize and emphasize in the special education context that "school districts ... have
a legitimate interest in maximizing the utility of scarce funds. This interest is likewise reasonably
25  advanced by limiting services to those environments that are regulated, monitored, and which might
offer beneficial economies of scale." *Hooks v. Clark County School Dist.* (9th Cir. 2000) 228 F.3d
26  1036, 1043. Such economies of scale are amply demonstrated here. For example, the Administrative
Decision's award initially provided that the District was required to provide 200 hours of Lindamood
27  Bell services to TM. Decision at 1910. While TM interpreted this award as requiring reimbursement
28                                                                                          (continued...)

Parents, of course, can pursue whatever educational choices are best for their child; that is not in dispute here. The issue is under what circumstances parents may receive public reimbursement for an educational choice which they made. It is clear that parents seeking reimbursement must comply with the law throughout the entire process and not merely to the point where they think they have achieved what they want. Where parents unilaterally place their child in a private school and then frustrate the public educational authorities' ability to "place the child in an appropriate private setting of the State's choice," thus making it impossible to conform to IDEA's mandate, equitable considerations demand that the court deny reimbursement.

*Bettinger v. New York City Bd. of Educ.* 2007 WL 4208560, *7 (S.D.N.Y. 2007).

**C.    TM's Claim for Reimbursement Must Be Denied Because the District Provided and Offered Him FAPE.**

As set forth in the District's Brief in Support of Motion for Summary Judgment/Review ("District's Motion") at 1:7-22:24, the District amply provided FAPE, both through special education services, as well as through extraordinary individual and small group instruction in his general education classrooms. As set forth above, this extraordinary attentiveness continued on into TM's third grade class, which he attended for all of three weeks, before being yanked out without notice and placed in the tiny, restrictive Star Academy.

**D.    TM's Claim for Reimbursement Must Be Denied Because the Parent's Unilateral Placements Were Not Appropriate.**

Again as set forth in the District's Motion at 4:14-5:2, 23:1-10, TM's unilateral placements consistently violated the mainstreaming requirement of the IDEA applicable to a parent's private placements. Star Academy is an entirely segregated facility, devoted exclusively to children with learning disabilities. His placement at Star separated him from his best friend, with whom his

---

[8]    (...continued)
Decision's award initially provided that the District was required to provide 200 hours of Lindamood Bell services to TM. Decision at 1910. While TM interpreted this award as requiring reimbursement to him for the $18,000 incurred through his attendance at the Lindamood Bell Center in Corte Madera, the District investigated and discovered that it could train up to 15 of its teachers to provide official Lindamood-Bell instruction for a mere $7,500. *See* Response to Request for Clarification at 2691:24-2692:4, and generally, 2690:17-2693:3. Not only was the teacher training less than half of the cost of individual services, it would redound to the benefit of numerous other students in addition to TM. Despite that dramatic cost difference, the Hearing Officer, in a "clarification" issued only after the District's appeal had been filed, explained that he had intended to award the vastly more expensive services which benefitted TM alone. Order Granting Petitioner's Request for Clarification, 2696-2697.

1  teacher's had deliberately paired him to provide peer assistance, and also robbed him of the chance

2  to show off his strengths in math by assisting his non-learning disabled peers, as well as his excellent

3  social skills and grade level performance in elective enrichment programs.  TM's other placements

4  were also segregative, and were criticized on that basis by his own tutor.  *See Gagliardo v. Arlington*

5  *Central School Dist.* (2d Cir. 2007) 489 F.3d 105, 114-115 (reimbursement denied despite student's

6  success where parent's private placement was not appropriate to the student's specific needs.)

7  
        **E.    TM's Claim for Reimbursement Should Be Denied Because His Parent's Failed**
8              **to Provide the Required Notice to the District That They Were Rejecting Its Services and Failed to Provide the District an Opportunity to Address Their**
9              **Concerns.**

10      Even where a district has failed to provide FAPE, reimbursement should be denied where a

11  student's parents failed to provide proper notice and otherwise refused to cooperate with the District

12  in providing FAPE.

13      The IDEA itself provides:

14          The cost of reimbursement ... may be reduced or denied– if–

15          [1.] at the most recent IEP meeting that the parents attended prior to
16          removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the
17          public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense;

18  
19          [2.] 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the
20          parents did not give written notice to the public agency of the [same] information[; or

21          3.] upon a judicial finding of unreasonableness with respect to actions taken by the parents.

22  
23  20 U.S.C. §1415(a)(10)(C)(iii).

24      The uncontradicted evidence, as well as the findings of the Decision, demonstrated that TM's

25  mother fail to provide any notice of a rejection of the services offered by the District, either at his last

26  IEP, or ten days prior to his placement.  In addition, the uncontradicted evidence and findings

demonstrated that in the fall of TM's third grade year she refused to cooperate with the District's

27
28

1   attempts to address her concerns and make appropriate adjustments, if necessary to TM's IEP.[9]

2        TM seeks to avoid consequences for his failure to give notice by asserting that it was a

3   "harmless error," but cites no authority supportive of such analysis.  Instead, the authority he cites

4   address situations where a *school district's* alleged procedural errors were found to be harmless.  *M.L.*

5   *v. Federal Way School Dist.* (9th Cir. 2005) 394 F.3d 634, 651(school district's failure to include

6   teacher on IEP team); *Park, ex rel. Park v. Anaheim Union High School Dist.* (9th Cir. 2006) 464 F.3d

7   1025, 1032 (school district's failure to give largely non-verbal psychological test in student's primary

8   language); *Ford ex rel. Ford v. Long Beach Unified School Dist.* (9th Cir. 2002) 291 F.3d 1086, 1089

9   (school district's failure to assess classroom performance of student by someone other than her regular

10  classroom teacher).

11       Pertinent authority confirms that such a failure to give notice is not "harmless."  As explained

12  in *Greenland School Dist. v. Amy N.* (1st Cir. 2004) 358 F.3d 150, 160:

13       Nor can this failure be dismissed as "harmless." These statutory provisions make clear
         Congress's intent that *before* parents place their child in private school, they must at
14       least give notice to the school that special education is at issue. This serves the
         important purpose of giving the school system an opportunity, before the child is
15       removed, to assemble a team, evaluate the child, devise an appropriate plan, and
         determine whether a free appropriate public education can be provided in the public
16       schools.

17  The *Greenland* court noted that the notice requirement was part of several 1997 amendments

18  specifically intended to restrain the availability of reimbursement for private placements. *Id.* at 160.

19  Indeed, the court noted that implementing federal regulations suggest that such notice, or at least some

20  formal challenge to the services offered by the school, is a *prerequisite* to reimbursement: "the

21  regulations suggest that a child ... who is removed from her school without her parents or her school

22  ever questioning the availability of FAPE is not within the category of children eligible for tuition

23  reimbursement." *Id.* at 161.

24       The facts of this case are very similar to those in *Ms. M. ex rel. K.M. v. Portland School*

25

26  _____

27  [9]     TM does not challenge the Decision's factual findings establishing both that she failed to
         provide the required notice of her intention to privately place TM. Decision at 1908. Nor does TM
28  challenge the finding that ZM refused to agree to meet with the District in the fall of 2006 to discuss
         here concerns. Decision at 1908, 1897.

1 │ *Committee* (1st Cir. 2004) 360 F.3d 267, 269 -274, in which a court denied reimbursement to a parent

2 │ who both failed to object at an IEP meeting and then subsequently refused to cooperate with a school

3 │ District. The court again rejected the parent's argument that such failure was an "innocent mistake,"

4 │ noting that the IDEA has long provided that parent's who make unilateral placements do so at their

5 │ own financial risk, that the intent of the 1997 amendments to the IDEA were specifically intended to

6 │ limit reimbursement, and that the parent's failure to provide the school an opportunity to respond to

7 │ her concerns despite two requests by the school were more than sufficient to support the denial of

8 │ reimbursement. *Id.*

9 │     The court in *Ms. M.* also squarely rejected any contention that reimbursement could be

10 │ awarded as "compensation" for alleged deficiencies arising prior to her failure to give notice, holding

11 │ that such "compensation" would constitute an impermissible end run around the statutory notice

12 │ requirement. *Ms. M. ex rel. K.M. v. Portland School Committee, supra,* 360 F.3d at 273.

13 │     The impropriety of the reimbursement award is further confirmed by the explanation in *Ms.*

14 │ *M* that "compensatory education" entails future services, not reimbursement for past services. 360

15 │ F.3d 267, 273-74; *accord, G ex rel. RG v. Fort Bragg Dependent Schools* (4th Cir. 2003) 343 F.3d 295,

16 │ 309("[c]ompensatory education involves discretionary, prospective, injunctive relief"); *see Parents*

17 │ *of Student W. v. Puyallup School Dist., No. 3* ("*Student W*")(9th Cir. 1994) 31 F.3d 1489, 1497

18 │ (compensatory relief is not a form of damages, and there is no obligation to provide a day-for-day

19 │ compensation for time missed); *Reid ex rel. Reid v. District of Columbia* (D.C. Cir. 2005) 401 F.3d

20 │ 516, 523-524 (same). That rule confirms the impropriety of the Decision's award here, as TM not

21 │ only admits, but in fact criticizes the Decision for awarding reimbursement of Star Academy's tuition

22 │ as "compensatory." "Plaintiff's Appeal Brief" ("TM Brief") at 11:16-12:9; *see* Decision at 1900-

23 │ 1901.[10]

24 │

25 │ [10]    The Decision's award of compensatory education is internally inconsistent. The Decision
26 │ broadly faults the District for not "appropriately" acknowledging ZM's concerns (Decision, at 1900-1901), while at the same time, finding that it was ZM who refused to meet with the District despite
27 │ the District's repeated requests. Decision, 1897("Student did not prove that his parents requested an IEP team meeting. In addition, when the District contacted Mother to suggest and/or schedule a
28 │ (continued...)

1    TM's cited authorities provide no support for his effort to obtain full reimbursement for his

2    unilateral placement.  For example, in the unpublished *per curiam* opinion of *Bend-Lapine School*

3    *Dist. v. K.H.* (9th Cir. 2007) 234 Fed.Appx. 508, 509 (emphasis added), the 9th Circuit affirmed

4    reimbursement where the "[t]he ALJ ... found that [the student's]'s mother *complied with the IDEA's*

5    *notice provision* ... before placing [the student] in a private residential school."  This brief document

6    otherwise contains no substantive analysis or discussion.

7         TM's citation to *M.V. v. Shenendehowa Cent. School. Dist.* (N.D. N.Y. 2008) 2008 WL 53181

8    is also inapposite.  In that case, the court held tuition reimbursement was not barred by the parent's

9    refusal to make the student available for intake interviews where the proposed schools were

10   *inappropriate* for the student (*id.* at *4-*5), one of the intake interviews was tardy (*id.* at *5), and

11   where the District admitted it had not provided FAPE.  *Id.* at *5.  The case is distinguishable here as

12   it does not concern a failure to provide the notice required by the statute, as it does not concern a

13   district which offered FAPE, appropriate services, and was more than willing to try and address any

14   concerns, and because Star Academy was not appropriate for TM as it failed to fulfill the

15   mainstreaming requirement of the IDEA.

16        TM does not challenge the Decision's finding that his mother refused to cooperate with the

17   District at the time she was seeking a unilateral placement.  Instead, she argues that her failure to

18   notice or cooperate was harmless because the District was merely seeking to set up an IEP meeting

19   at that time.  The argument is disingenuous, as it ignores the purpose of an IEP meeting to discuss,

20   formulate and implement plans to address a student's educational needs. 1581:17 -1584:14(SP);

21   417:11-18(FD)(wished to set up meeting to address ZM's concerns regarding TM); "Log of Important

22

23   [10]    (...continued)
     meeting, Mother either decline, stated that she was not interested at that time, or indicated that she

24   would get back to the District.  Mother never did so.")  Moreover, the evidence demonstrated that the
     District was consistently responsive to ZM's concerns.  For example, the District complied with ZM's

25   requests regarding standardized tests to be given to TM (compare Note from ZM to FD, 11/29/05,

26   2337 with "Assessment Summary," 2/7/06, 2348-2351, *accord,* "Log of Important Contacts" ("Log")
     various dates, 2302-2303; Note from ZM to FD, 4/18/06, 2377 with "Star Student Report," 2378),

27   complied with ZM's request to have her advocate/expert/tutor attend the spring 2006 IEP meeting
     (Log, various dates, 2303), and complied with her request to move TM to a different speech and

28   language therapy group (594:13-595:20(LK); *accord,* Log, 2302).

1   Contacts," Exh. 44, 2341 ("We will hold mtg w/in 2 wks w/team to discuss strategies for year.").[11]

2   Indeed, the testimony of TM's mother demonstrates that she made a unilateral decision to place TM

3   at a private school by this time.  1188:3-14 (ZM was determined to find a different school for TM);

4   1290:6-23(ZM felt Sun Valley had failed TM and she was very angry).

5        In sum, reimbursement should be entirely denied due to the failure of TM's parents to give

6   notice of their rejection of the District's services, either at the spring 2006 IEP, attended and signed

7   off on by TM's mother, with the advice and assistance of her expert/advocate, Ms. Ruppersberg, or

8   through a ten day notice before TM's abrupt removal from Sun Valley, as well as through ZM's

9   stubborn refusal in the fall of 2006 to attend a meeting to address her concerns.

**F.    TM Is Not Entitled to An Award of Any Fees, But Instead, the District Should Be Awarded its Attorneys Fees Incurred in Defeating TM's Meritless Claims.**

12        As the District demonstrates in its brief as well as in this opposition to TM's appeal, he is

13   entitled to no relief whatsoever, and thus does not qualify for an award of fees.

14        The IDEA permits, but does not require, an award of reasonable attorneys fees to parent's who

15   prevail on their claims:

> In any action or proceeding brought under this subsection, the court, in its discretion, *may award* reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is a prevailing party.

19   20 U.S.C. § 1415(e)(4)(B)(emphasis added). On the other hand, fees cannot be awarded where parents

20   do not prevail or only obtain minimal or technical success. *Id.*; *Parents of Student W. v. Puyallup*

21   *School Dist., No. 3* (9th Cir. 1994) 31 F.3d 1489, 1498. Even if parents obtain substantial success, any

22   award of fees should reflect the degree to which a parent was successful on their claims. *Van Duyn*

23   *ex rel. Van Duyn v. Baker School Dist. 5J* (9th Cir. 2007) 502 F.3d 811, 826. Because all of TM's

24   claims are without merit as set forth herein as well as in the District's brief, he is entitled to no fees

---

[11]   The evidence showed that the District had the capacity to provide up to a half a day of resource specialist time, or even to put TM in a special day class for his entire school day should it be appropriate! 1578:12-1581:16(SP). In other words, the District had a capacity to duplicate the highly restrictive Star Academy setting, but had never yet found that degree of exclusion and segregation appropriate.

1  whatsoever.

2      The IDEA also authorizes an award of attorneys fees to school districts in defense of claims

3  which are "frivolous, unreasonable, or without foundation." 20 U.S.C. §1415(i)(3)(B)(i). That section

4  similarly provides for an award of fees in favor of the school if the complaint or "subsequent cause

5  of action" was brought "was presented for any improper purpose, such as to harass, to cause

6  unnecessary delay, or to needlessly increase the cost of litigation."

7      As reflected in the evidence adduced at hearing, TM has asserted a number of unreasonable

8  and groundless claims. They include: 1) the false claim of a failure to designate whether speech and

9  language services would be "push in" or "pull out"; 2) the false claim of an obligation to specify and

10 the false claim of consequence to failing to specify whether language services would be individual or

11 small group; 3) the false contention that the District had an obligation to inform the parents of the ten

12 days written notice requirement on learning they were considering a private school; 4) the false

13 contention that assessments were not performed on Petitioner; 5) the false contention that services

14 were not provided to Petitioner; and finally, 6) the false contention that Petitioner did not receive

15 educational benefit. In defending against these claims, San Rafael was forced to disrupt the lives of

16 innumerable dedicated District employees for preparation and attendance at hearing, and incurred

17 substantial attorneys' fees. *See* Complaint, 2167- 2176; Decision, 1879-1909. The District requests

18 that this court set a hearing date to an appropriate reimbursement of attorneys fees to the District.

19 **IV.     CONCLUSION**

20      For the foregoing reasons, the TM's Motion for Summary Judgment should be denied.

21 Dated: February 14, 2008                    Respectfully submitted,

22                                             RUIZ & SPEROW

23

24 By: _____
                    David E. Lyon
25 Attorneys for Appellant/Cross-Respondent
   San Rafael City Schools

26

27

28