Margaret M. Broussard (SBN 219251)
7909 Walerga Road, Suite 112 PMB 1157
Antelope, CA 95843
Phone (916) 722-2370
Fax (916) 722-2801

Attorney for T.M.

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN RAFAEL CITY SCHOOLS, | ) Case No.: 3:07-CIV-04702 WHA |
| | ) |
| Plaintiff, | ) **OPPOSITION TO MOTION FOR** |
| | ) **SUMMARY JUDGEMENT/REVIEW** |
| vs. | ) |
| | ) Hearing: March 6, 2008 8:00am |
| OFFICE OF ADMINISTRATIVE | ) |
| | ) |
| HEARINGS, | ) |
| | ) |
| Defendant | ) |
| | ) |
| | ) |
| | ) |
| T.M., | ) |
| | ) |
| Real Party in | ) |
| | ) |
| Interest | ) |
| | ) |
| | ) |

//

//

//

//

//

//

Defendant's Opposition to Motion for Summary Judgment/Review Case 3:07-CIV-04702 WHA –
Page 1

## Contents

INTRODUCTION................................................... 2

BACKGROUND FACTS.............................................. 2

LEGAL AUTHORITY............................................... 5

STANDARD OF REVIEW............................................ 7

ARGUMENT..................................................... 11

A. THE DISTRICT'S ATTEMPT TO AVOID REIMBUREMENT FOR T.M.'s
PLACEMENT BY INVOKING THE LEAST RESTRICTIVE ENVIRONMENT
REQUIREMENT IS UNREASONABLE AND NOT SUPPORTED BY LAW. ....... 11

B. THE DISTRICT's ATTEMPT TO AVOID REIMBURSEMENT FOR TUTORING
AND THE LINDAMOOD BELL SERVICES BY INVOKING THE LEAST
RESTRICTIVE ENVIRONMENT REQUIREMENT ANALYSIS IS UNREASONABLE
AND NOT SUPPORTED BY LAW. ................................... 15

C. THE ALJ DID NOT ERR WHEN HE FOUND THAT THE STATUTE OF
LIMITATIONS DOES NOT BAR A FINDING OF DENIAL OF FAPE FROM MAY
18, 2005 FORWARD. .......................................... 16

1. THE CLAIM THAT THE  DISTRICT FAILED TO PROPERLY ASSESS
T.M. IN THE 2004-2005 SCHOOL YEAR FROM MAY 18, 2005 FORWARD
WHICH DENIED T.M. FAPE IS NOT BARRED BY THE STATUTE OF
LIMITATIONS. .............................................. 18

2. THE CLAIM THAT THE DISTRICT FAILED TO PROVIDE AN
APPROPRIATE LEVEL OF SPECIAL EDUCATION SERVICES WHICH DENIED
T.M. FAPE IS NOT BARRED BY THE STATUTE OF LIMITATIONS. ..... 21

CONCLUSION................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

*Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.*, 267
  F.3d 877,887 (9th Cir. 2001) .................................. 7

*Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)).............. 8

*Burlington N., Inc. v. Weyerhaeuser Co.*, 719 F.2d 304, 307
  (9thCir. 1983)) ............................................. 7

*Cleveland Heights-University Heights City Sch. Dist. v. Boss*,
  144 F.3d 391, 399-400 (6th Cir. 1998) ........................ 14

*Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir.
  1987). ....................................................... 7

*Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 n.4 (9th
  Cir.2007) .................................................... 8

*Lauren W. ex. Rel. Jean W. v. Deflaminis* (3d Cir. 2007) 480 F.
  3d 259, 276 ................................................. 13

*Leake by Shreve v. Berkeley County Bd. Of Education*, (N.D. W.
  Va. 1997)965 F.Supp 838 ..................................... 22

*M.S. ex. Rel. S.S. v. Board of Educ. Of the City School Dist. Of
  Yonkers*, 231 F.3d 96 (2nd Cir. 2000). ....................... 13

*Miller v. San Mateo-Foster City Unified Sch. Dist.*, 318 F.Supp.
  2d 851, 853-54, (N.D. Cal. 2004) ........................ 5, 22

*Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th
  Cir.1993) .................................................... 8

*Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489,
  1496-97 (9th Cir. 1994) ..................................... 16

*Ravenswood Elementary School District and Sequoia Union High*

  *School District,* Case No. SN 988-97, SEHO 1997-1998 ......... 23

*Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994) 8 1

*Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 481 F.3d 770,

  775 (9th Cir. 2007) ........................................ 8

*Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 84 (3d

  Cir. 1999) ............................................... 14

**Statutes**

20 U.S.C. § 1412(a)(10)(C).................................. 12

20 U.S.C. § 1412(a)(10)(C)(iii)(I).......................... 16

20 U.S.C. § 1415(i)(3)(B)(i)................................ 24

20 U.S.C. § 1412(a)(10)(C)(iii)(I).......................... 16

20 U.S.C. § 1412(a)(3)...................................... 8

20 U.S.C. § 1414(d)......................................... 9

20 U.S.C. § 1415(b)(2)...................................... 9

20 U.S.C. § 1415(e)(2)...................................... 10

20 U.S.C. 1415(i)(2)(C)(iii)(2006).......................... 19

20 U.S.C.§ 1415(i)(2)(B) (2003)............................. 10

Cal. Educ. Code § 56100(I).................................. 8

Cal. Educ. Code § 56128..................................... 8

Cal. Educ. Code § 56300..................................... 9

Cal. Educ. Code § 56000..................................... 8

Cal. Educ. Code § 56344..................................... 9

Cal. Educ. Code § 56176..................................... 16

**Regulations**

34 C.F.R. § 300.148(d)...................................... 16

## INTRODUCTION

This appeal results from an administrative decision by the California Office of Administrative Hearings in a case involving the special education placement and services for T.M., a minor child. Plaintiff San Rafael City Schools ("District") appeals the portions of the decision where Defendant T.M. ("T.M.") prevailed and also appeals the award of remedies to T.M..

## BACKGROUND FACTS

On May 18, 2007, T.M. filed a complaint for a due process hearing against the San Rafael City Schools ("District") alleging that the District had not provided T.M. with a free appropriate public education (FAPE) from May 18, 2005 through the end of the extended school year in August 2007.(OAH 2167-2176). At the time the hearing was filed, T.M. was ten years old and in the third grade. (OAH 2167).

T.M. had attended District schools in Kindergarten, First and Second Grades. (OAH 1878-1879 #1-2). T.M. was eligible for special education services during all relevant time periods alleged in the original complaint. (OAH 1879 #3). A few weeks after the beginning of third grade, in the 2006-2007 school

year, T.M. was unilaterally placed by his parents at STAR Academy. (OAH 1896 #81). STAR Academy is a California Certified Non-Public School which provides an alternative school placement for students with special needs. (OAH 1899-1900 #108)

As a result of the District's denial of FAPE to T.M., he requested reimbursement for private tutoring provided by Joy Ruppersburg which T.M. received during some of the time there was a denial of FAPE.(OAH 2067). T.M. requested the ALJ order the District to fund compensatory education in the form of 200 hours of LindaMood Bell tutoring and reimbursement for his placement at STAR Academy during the 2006-2007 school year.(OAH 2067).

The special education due process hearing between the parties took place over six court days from July 13, 2007 until July 23, 2007. (OAH 1876).  The ALJ heard from over twenty (20) witnesses and admitted voluminous paper evidence.  (OAH 1876-1911).  A decision was rendered in the case on August 13, 2007. (OAH 1911).  The decision was lengthy and comprises 36 pages, much of it single spaced.  (OAH 1876-1911).

The decision is carefully crafted, speaking to all of the issues, and the ALJ carefully goes through the evidence which supports each and every determination. (OAH 1876-1911).

The ALJ determined the District denied T.M. a FAPE for all of the time periods alleged in the complaint. (OAH 1894 #73, 1904 #14, 1906 #23-24, 1908 #35). As a result of this denial, the ALJ awarded reimbursement for $2740 for the services of Ms. Ruppersburg, a private tutor hired by T.M. (OAH 1892-1893 #64). T.M. was also awarded 200 hours of LindaMood Bell Tutoring as compensatory education. (OAH 1899 #107, 1910 #43). Finally, T.M.'s parents were awarded twenty-eight percent (28%) of the tuition for T.M.'s placement at STAR Academy. (OAH 1899-1901 #108). The ALJ specifically noted, however, that he was awarding the reimbursement for STAR Academy as compensatory education. (OAH 1899-1901 #108).

After the administrative decision was entered, T.M. filed a Motion for Clarification asking the ALJ to clarify the specific parameters of the award of LindaMood Bell services in the original decision. On September 13, 2007, the ALJ issued an order clarifying his original decision and ordering the District to reimburse the parents for the hours T.M. had already completed at LindaMood Bell and to fund the remainder of the LindaMood Bell tutoring at the LindaMood Bell Center. (OAH 2696-2697). He further ordered the District reimburse the parents for their mileage for the transportation of T.M. to and from the center.(OAH 2696-2697).

The District appealed the original decision after it had notice of the Motion for Clarification, but prior to the granting of the Motion for Clarification.  T.M. cross-appealed on the limited issue of the sufficiency of the remedies.

## LEGAL AUTHORITY

*Miller v. San Mateo-Foster City Unified Sch. Dist.,* 318 F.Supp. 2d 851, 853-54, (N.D. Cal. 2004) summarized the language, purpose and history of the IDEA and federal and state implementing regulations, as follows: Congress passed the IDEA "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs" 20 U.S.C. § 1400(c). If a State provides every qualified child with a free appropriate public education ("FAPE") under federal statutory requirements, the IDEA provides that State with federal funds to help educate children with disabilities. In exchange for these federal funds, the State must comply with "Child Find," which requires the State to design a program to identify and provide services to children with special education needs. 20 U.S.C. § 1412(a)(3).

California maintains a policy of complying with IDEA requirements. See, e.g., Cal. Educ. Code §§ 56000, 56100(I), 56128. It implements the Child Find program by requiring local school districts to identify disabled students by "actively and systematically seeking out all individuals with exceptional needs." Cal. Educ. Code § 56300. Individualized education plans ("IEPs") are required for disabled students. 20 U.S.C. § 1414(d); Cal. Educ.Code § 56344. *See also Hacienda La Puente Unified School Dist. v. Honig,* 976 F.2d 487, 491 (9th Cir.1992).

The IDEA provides both substantive and procedural safeguards. Violations of these safeguards may prevent a child from receiving a FAPE. Among the most important procedural safeguards are those that protect parents' rights to be involved in the development of their child's IEP. *Amanda v. Clark County Sch. Dist.,* 267 F.3d 877, 882 (9th Cir.2001). Parents have the right to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [a FAPE] to such child." 20 U.S.C. § 1415(b)(1)(E). After making such a complaint, parents are entitled to "an impartial due process hearing ... conducted by the State educational agency or by the local educational agency or an intermediate educational unit, as determined by

State law or by the State educational agency." 20 U.S.C. §

1415(b)(2). If either party is dissatisfied with the state

educational agency's review, that party may bring a civil action

in state or federal court. 20 U.S.C. § 1415(e)(2). California

has implemented the mandated procedural safeguards in California

Education Code sections 56500 through 56507.


## STANDARD OF REVIEW

The court reviews findings of fact for clear error, even if

those findings are based on the administrative record. *Amanda J.*

*ex rel. Annette J. v. Clark County Sch. Dist.*, 267 F.3d 877,887

(9th Cir. 2001). A finding of fact is clearly erroneous if

" 'the reviewing court is left with a definite and firm

conviction that a mistake has been committed.' " *Id.* (quoting

*Burlington N., Inc. v. Weyerhaeuser Co.*, 719 F.2d 304, 307

(9thCir. 1983)). Mixed questions of fact and law are reviewed de

novo unless the question is primarily factual. *Id.;*

*Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir.

1987).

When a party challenges the outcome of an IDEA due process

hearing, the reviewing court receives the administrative

record, hears any additional evidence, and, "basing its decision

on the preponderance of the evidence, shall grant such

relief as the court determines is appropriate." 20 U.S.C.§

1415(i)(2)(B) (2003). Courts give " 'due weight' " to the

state administrative proceedings, *Van Duyn ex rel. Van Duyn v.*

*Baker Sch. Dist. 5J*, 481 F.3d 770, 775 (9th Cir. 2007) (quoting

*Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)),

and, at a minimum, " 'must consider the findings carefully,' "

*Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir.

1993) (quoting *Gregory K.*, 811 F.2d at 1311). The court

gives particular deference where the hearing officer's

administrative findings are "thorough and careful." *Union Sch.*

*Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994). The Ninth

Circuit has rejected a complete de novo standard stating that

"…the fact-intensive nature of a special education eligibility

determination coupled with considerations of judicial economy

render a more deferential approach appropriate."

*Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 n.4 (9th

Cir.2007).

        In its Motion for Summary Judgment/Review, the District

provides no support for disturbing any of the findings of the

ALJ.  The District fails to make any arguments regarding any

allegations of clear error or mistake on in the ALJ's factual

findings.  The District simply attempts to recite one-sided witness testimony and documentary evidence, both of which the ALJ heard and found unpersuasive, in an attempt to retry the case.  Without a showing of clear error on the part of the ALJ, and taking into account the voluminous record and detailed, careful findings of the ALJ, the District has simply not shown that the findings of the ALJ should be disturbed.

In this case, the transcript of the due process hearing and both the ALJ's decision and Clarification Order demonstrate that he carefully and impartially considered all the evidence, and demonstrate his sensitivity to the complexity of the issues presented by the parties. (OAH 1876-1911).  The decision was lengthy and detailed, and the findings were supported with testimony and documentary evidence. (OAH 1876-1911).  The ALJ provided lengthy discussions regarding each of the material issues in dispute. (OAH 1876-1911).  He decided many of the issues on the basis of oral testimony, considering the content of the testimony itself and assigning weight based on a determination as to the credibility of the witness. (OAH 1876-1911).

For these reasons, the Court should accord substantial weight to the ALJ's factual findings. He made careful

determinations on issues presented, finding some issues in favor of the District and other issues in favor of T.M.. From a factual standpoint, the factual findings of the ALJ were careful and should not be disturbed. The ALJ correctly applied the facts as he found them to the law with the exception of the award of reimbursement to T.M. for his placement at STAR Academy which is discussed in T.M.'s appeal brief.

The District's appeal brief re-presents the District's underlying case in great detail, attempting to convince this Court that the District should have won the underlying hearing. However, the question before this court is whether the findings of the ALJ should be disturbed at all. The District has provided not examples of clear error on the part of the ALJ. The District has not cited any examples of the ALJ not being thorough or careful or not specifically analyzing all of the issues before him. As a matter of fact, the ALJ produced a 34 page decision full of careful detail. (OAH 1876-1911). In many instances he relies upon District witnesses to support his findings. (OAH 1876-1911).

There was a preponderance of evidence that the District did not provide FAPE to T.M. The District's appeal brief does not present the evidence from both sides on each issue and does not

explain how the ALJ's finding is not supported by the preponderance of the evidence.  Therefore, the ALJ's finding should not be disturbed and the underlying decision upheld.

**ARGUMENT**

A. **THE DISTRICT'S ATTEMPT TO AVOID REIMBUREMENT FOR T.M.'s UNILATERAL PLACEMENT BY INVOKING THE LEAST RESTRICTIVE ENVIRONMENT REQUIREMENT IS UNREASONABLE AND NOT SUPPORTED BY LAW.**

In order to be eligible to receive reimbursement for a unilateral placement, T.M. first had to show that the District violated the IDEA; then T.M. must also establish that the placement at STAR Academy was "proper under the Act [IDEA]."*Florence Cty. Sch. Dist. Four v. Carter,* 510 U.S. 7, 15 (1993). The District contends that the placement of T.M. was not proper under the IDEA because STAR Academy cannot satisfy the IDEA's mainstreaming requirement. The District's argument actually relies upon two related propositions. First, that the mainstreaming requirement applies to parentally selected private placements, and second that the failure of a parentally selected private placement to satisfy the requirement bars reimbursement under the IDEA for the costs of sending a child to the non-complying school.

The District has failed to show that the ALJ erred when he did not consider the least restrictive environment ("LRE") when awarding reimbursement for T.M.'s placement at STAR Academy. The ALJ affirmatively determined that the placement at STAR Academy was indeed appropriate for T.M.. (OAH 1876-1911). Once a district fails to offer FAPE and the parents have to look to a private school for placement, the parents can never get reimbursement under the District's novel theory. A parent cannot unilaterally place a student in another public school placement, only a private school. In order for a placement to be proper, the placement must provide the special education services the student needs that the district is not providing. These services are provided at schools specifically designed to offer special education instruction, like STAR Academy.

The District cites no cases from the 9th Circuit which stand for the proposition that LRE is a consideration when determining whether reimbursement for a parental placement is warranted. This is because there are no cases on point and, as a matter of fact, the 9th Circuit has never applied this requirement when awarding reimbursement. *See Union School District v. Smith,* 15 F.3d 1519, (9th Cir. 1994); *Bend-Lapine School District v. K.H.,* 234 Fed.Appx. 508, 2007 WL 1675180 (C.A.9 (Or.)). None of the cases the District cited have held that a judge must determine

that the failure of the parent's placement to meet the LRE requirement is a bar to reimbursement.

Further, the District's reliance on *Lauren W. ex. Rel. Jean W. v. Deflaminis* is misplaced. *Lauren W. ex. Rel. Jean W. v. Deflaminis* (3d Cir. 2007) 480 F. 3d 259, 276. The *Lauren W.* court stated that, "A private placement is "proper" if it (1) is "appropriate," i.e., it provides "significant learning" and confers "meaningful benefit," and (2) is provided in the least restrictive educational environment. *Id.* However, the court in *Lauren W.* reimbursed the parents for a private school placement without any analysis of the least restrictive environment. *Id.* The Court actually deferred to the hearing officers determination that the placement at the unilateral placement was appropriate, a finding identical to the ALJ's finding in this case. *Id.*

In *M.S. ex. Rel. S.S. v. Board of Educ. Of the City School Dist. Of Yonkers,* the 3rd circuit upheld the determination of the hearing officer who used the issue of LRE as part of a determination that the parent's placement was not appropriate. *M.S. ex. Rel. S.S. v. Board of Educ. Of the City School Dist. Of Yonkers*, 231 F.3d 96 (2nd Cir. 2000). However, the court clearly stated that,

> As to the restrictive nature of the Stephen
> Gaynor *School*, we recognize that parents
> seeking an alternative placement may not be
> subject to the same mainstreaming
> requirements as a *school* board. See *Warren
> G. v. Cumberland County Sch. Dist.*, 190
> F.3d 80, 84 (3d Cir. 1999) ("[T]he test for
> the parents' private placement is that it is
> appropriate, and not that it is perfect.");
> *Cleveland Heights-University Heights City
> Sch. Dist. v. Boss,* 144 F.3d 391, 399-400
> (6th Cir. 1998) (holding private placement's
> failure to meet IDEA's mainstreaming
> requirement does not bar parental
> reimbursement). Nonetheless, IDEA's
> requirement that an appropriate education be
> in the mainstream to the extent possible,
> see 20 U.S.C. # 1412(5)(B) (1994), remains a
> consideration that bears upon a parent's
> choice of an alternative placement and may
> be considered by the hearing officer in
> determining whether the placement was
> appropriate, as it was here.

The Court in M.S. did not find that a private placement's

failure to meet IDEA's mainstreaming requirement bars parental

reimbursement; the Court found that it may be a consideration

for a hearing officer. *Id.*

The 6th Circuit has taken the position that the LRE

requirement is not an issue in reimbursement for parental

placement.  In *Clevland Heights- University Heights City School

District v. Boss,* the court states:

> From these cases it is clear that the IDEA
> was intended to provide both a free and an
> appropriate education for disabled children
> and that the Act should not be read to

provide one of these benefits at the expense of the other. See *Burlington,* 471 U.S. at 372. This is exactly what the District is asking us to do in this case. The District would have us read the IDEA to say, in effect: "If we fail to provide a disabled child with an appropriate education, the parents must pay for a private education, or let their child languish in our institution if the only placement more suitable to her needs and more closely approximating the ideal envisioned by the IDEA than what we offer is a specialized private school that admits only learning disabled students." Congress did not intend to place beneficiaries of the IDEA in the position of having to choose only among these unpalatable alternatives.  Accordingly, we hold that the failure of the Lawrence School to satisfy the IDEA's mainstreaming requirement does not bar the Bosses from receiving reimbursement for expenses associated with sending Sommer to Lawrence for the 1994-95 school year.

In this case, the District has not shown that the ALJ erred in his determination that the parents should be reimbursed for T.M.s placement at STAR Academy because the STAR Academy placement was not in the least restrictive environment. Therefore, the administrative decision should be upheld.

   B. **THE DISTRICT's ATTEMPT TO AVOID REIMBURSEMENT FOR TUTORING AND THE LINDAMOOD BELL SERVICES BY INVOKING THE LEAST RESTRICTIVE ENVIRONMENT REQUIREMENT ANALYSIS IS UNREASONABLE AND NOT SUPPORTED BY LAW.**

Compensatory education services can be awarded as appropriate equitable relief. 20 U.S.C. § 1415(i)(2)(B)(iii) ("shall grant such relief as the court determines appropriate"); *Parents of Student W. v. Puyallup Sch. Dist.,* 31 F.3d 1489, 1496-97 (9th Cir. 1994). "Appropriate relief is relief designed to ensure the student is appropriately educated within the meaning of the Individuals with Disabilities Education Act." *Parents of Student W.,* 31 F.3d at 1497.

The District cited no statute, case law or other authority to support its proposition that the least restrictive environment requirement applies to an award of compensatory educational services. Compensatory services are services specially designed to make up for services that a district failed to provide a student when a denial of FAPE is determined. These services are by nature specific to make up for a student's individual loss of educational opportunity. To require that somehow these services have to be delivered in the general education class would require that a teacher remediate an entire class for the benefit of the student who is entitled to the compensatory education. This makes no sense, is completely unworkable and without any legal precedent. The ALJ committed no error in not considering LRE when awarding reimbursement for the compensatory educational services.

C. **THE ALJ DID NOT ERR WHEN HE FOUND THAT THE STATUTE OF LIMITATIONS DOES NOT BAR A FINDING OF DENIAL OF FAPE FROM MAY 18, 2005 FORWARD.**

Cal. Educ. Code § 56505(l) A request for a due process hearing arising under subdivision (a) of Section 56501 shall be filed within two years from the date the party initiating the request knew or had reason to know of the facts underlying the basis for the request. In accordance with Section 1415(f)(3)(D) of Title 20 of the United States Code, the time period specified in this subdivision does not apply to a parent if the parent was prevented from requesting the due process hearing.

Like all of the other errors alleged by the District, the Statute of Limitations argument is unsupported by case law and would require a novel reading of the statute.  The District contends that the student's allegation that he was not provided FAPE beginning May 18, 2005 is barred by the statute of limitations.  The complaint for the due process hearing was filed on May 18, 2007 and alleges violations of T.M's right to FAPE back two years.

The District wants this court to adopt a novel and legally unsupported reading of the statute of limitations. The District has failed to show that the ALJ erred in determining that claims raised in the complaint from May 18, 2005 forward were not barred by the statute of limitations.

1. UNDERLINE THE CLAIM THAT THE DISTRICT FAILED TO PROPERLY ASSESS T.M. IN THE 2004-2005 SCHOOL YEAR FROM MAY 18, 2005 FORWARD WHICH DENIED T.M. FAPE IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

Before any action is taken with respect to the initial placement of an individual with exceptional needs in special education instruction, an individual assessment of the pupil's educational needs shall be conducted. Cal. Educ. Code § 56320. The pupil must be assessed in all areas related to the suspected disability. Cal. Educ. Code § 56320(f). When an assessment for a pupil is proposed, the parent or guardian of the pupil shall be given, in writing, a proposed assessment plan within 15 days of the referral for assessment. Cal. Educ. Code § 56321(a). The proposed assessment plan given to parents or guardians shall be in language easily understood by the general public, explain the types of assessments to be conducted, state that no individualized education program will result from the assessment without the consent of the parent. Cal. Educ. Code § 56321(b). Pursuant to Section 1414(a)(1)(E) of Title 20 of the United States Code, the screening of a pupil by a teacher or specialist to determine appropriate instructional strategies for curriculum implementation shall not be considered to be an assessment for eligibility for special education and related services. Cal. Educ. Code § 56321(f). Upon completion of the administration

of tests and other assessment materials, an individualized education program team meeting, including the parent to discuss the assessment, the educational recommendations, and the reasons for these recommendations. Cal. Educ. Code § 56329 (a)(1).  Once a child has been referred for an assessment to determine the educational needs of the child, these determinations shall be made, and an individualized education program meeting shall occur, within 60 days of receiving parental consent for the assessment.  Cal. Educ. Code § 56302.1(a).

The personnel who assess the pupil shall prepare a written report with the results of each assessment. The report shall include, but not be limited to, all the following: (a) Whether the pupil may need special education and related services;  (b) The basis for making the determination; (c) The relevant behavior noted during the observation of the pupil in an appropriate setting; (d) The relationship of that behavior to the pupil's academic and social functioning; (e) The educationally relevant health and development, and medical findings, if any; (f) For pupils with learning disabilities whether there is such a discrepancy between achievement and ability that it cannot be corrected without special education and related services.   Cal. Educ. Code §56327.

The District claims that any allegation that the District failed to properly assess T.M. as of May 18, 2005 is time barred.  This argument completely fails.  The District is required to assess a student in all areas of suspected need. There are specific requirements for special education assessment including, but not limited to: presenting the parents a specific assessment plan, clearly designating the tests to be performed, creating a written report with the results of the testing, and holding an IEP meeting within 60 days of the signed assessment plan.  There was no evidence presented that the District completed an assessment in the area of Language Arts that complied with any of the IDEA requirements prior to 2006.  The District's claims in its brief that report cards, a fluency test given to all students, tests given in language arts in the classroom to all students, classwork, a teacher checklist, the Student Study Team meeting, speech and language testing and an IEP meeting constitute special education assessment flies in the face of the entire assessment scheme as laid out by statute. The District then attempts to state that because these things were done prior to May 18, 2005, the parents cannot claim that the district failed to properly assess T.M. as of May 18, 2005 The ALJ found that T.M. had needs in the area of Language Arts which were not properly assessed until 2006. (OAH 1876-1911).

The ALJ was aware of all of the meetings and information presented by the District in its brief and still found that T.M. was not properly assessed. (OAH 1876-1911).   The District has not shown that the ALJ improperly applied the statute of limitations on this issue. Therefore, the administrative decision should be upheld.


2. THE CLAIM THAT THE DISTRICT FAILED TO PROVIDE AN APPROPRIATE LEVEL OF SPECIAL EDUCATION SERVICES WHICH DENIED T.M. FAPE IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

The ALJ found that the amount of RSP services which were offered and provided to T.M. as of May 18, 2005 were inappropriate.  The District claims that since the amount of RSP services were determined at the March 5, 2005 IEP meeting, any claims which relate to this decision in the complaint filed May 18, 2007 are time barred.   This claim is novel and without any statutory authority, case law support or evidentiary support.

While the determination of the amount of services was made at the March 2005 IEP meeting, the District has presented no evidence that the parents knew or had reason to know at the time of the IEP that the amount of services offered were inappropriate.  As a matter of fact, the parents signed the IEP and agreed to the services.  It was only after time went by that

the parents became aware that the amount of services was insufficient. The Districts' attempt to reframe the statute would result in a complete change in the meaning of the statute and would result in an evisceration of the two year time period.

The statute of limitations does not prevent an ALJ from finding that a District had violated a student's right to FAPE for longer than two years, it simply limits the remedies to coincide with violations committed within the two years. The ALJ simply found that as of May 18, 2005 the amount of RSP was not appropriate. The fact he found it had happened even earlier is interesting but of no legal relevance. The District is attempting to escape liability for violations by arguing that they have been violating the law even longer than the two years and therefore the parents' claims are barred.

The District attempts to support its position using several cases that do not actually support its position. In *Miller v. San Mateo-Foster City Unified School District* the family filed for a due process hearing on November 27, 2002. *Miller v. San Mateo-Foster City Unified School District,* 318 F.Supp 2d 851, (ND.CA. 2004). The family claimed that the District failed to make the student eligible for special education services in 1997. At the time the statute of limitations in California was three years. The District court affirmed the hearing officers

determination that all claims prior to November 27, 1999 were time-barred. However, all claims from three years prior to the filing were not time-barred even though the District determined that the student was not eligible in 1997. The ALJ in the instant case made exactly the same determination and allowed all claims from two years (the new statute of limitation) prior to the filing of the complaint.

The District then attempts to rely on *Leake by Shreve v. Berkeley County Bd. Of Education*. In *Leake,* there was no state statute of limitations for IDEA claims and the court had to "borrow" a statute. *Leake by Shreve v. Berkeley County Bd. Of Education*, (N.D. W. Va. 1997)965 F.Supp 838. The parents claim was that the District's determination that a student was not eligible for special education more than seven years earlier was incorrect and that the student was entitled to more than seven years of compensatory educational reimbursement. *Id.* The Court found that the parents claim accrued when the district found the student ineligible. *Id.* The parents were aware of the finding of ineligibility in 1997. *Id.* In this case, T.M.'s parents were not aware at the IEP meeting that the RSP services were not sufficient and therefore, the claim did not accrue at the IEP meeting.

Finally, the *Ravenswood* case cited by the District is not relevant at all in this case and again finds that the parents could claim violations from three years prior to the date the complaint was filed (the statute was three years at that time). *Ravenswood Elementary School District and Sequoia Union High School District,* Case No. SN 988-97, SEHO 1997-1998.

The District has provided no authority to support its novel reading of the statute of limitations in an attempt to limit liability.  The District has not shown that the ALJ committed any error applying the statute of limitations and the decision of the ALJ should not be reversed.

## CONCLUSION

T.M. respectfully requests that the Court defer to the administrative decision in this case with the exception of the award of reimbursement for the student's placement at Star Academy.  The District has not shown that the administrative decision should be reversed.  The ALJ's findings were thorough and careful and he committed no clear error.  The ALJ did not commit error when he did not consider the least restrictive environment when he awarded reimbursement for STAR Academy.  The ALJ did not err when he found that the District denied T.M. FAPE

from May 18, 2005 forward.  Therefore, T.M. respectfully requests that the decision of the ALJ be upheld with the exception of the amount of the award of reimbursement for STAR Academy.

                              Dated this February 14, 2008

                                        /s/ _____

                                        Margaret Broussard
                                        Attorney for T.M.